# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **BRIAN PHILLIP SARTIN,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.:  6:13-cv-1112-MHH |
| | } |
| **CAROLYN W. COLVIN,** | } |
| **Commissioner of the Social Security** | } |
| **Administration,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §1383(c), claimant Brian Phillip Sartin seeks judicial review of a final adverse decision of the Commissioner of Social Security denying his claims for supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'" *Riggs v. Soc. Sec. Admin., Comm'r*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the findings of the Commissioner. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## **PROCEDURAL AND FACTUAL BACKGROUND**

Mr. Sartin applied for supplemental security income on April 16, 2010. (Doc. 10-3, p. 13). He alleges that his disability began on September 12, 2009. (*Id.*) After the commissioner denied Mr. Sartin's claim, Mr. Sartin requested a hearing before an Administrative Law Judge (ALJ). (*Id.*). The ALJ held a hearing on October 26, 2011. (*Id.*). The ALJ denied Mr. Sartin's claim on December 22,

2011. (Doc. 10-3, pp. 30-63). On May 15, 2013, the Appeals Council declined Mr. Sartin's request for review (Doc. 10-3, p. 13), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 1383(c)(3).

At the time of the administrative hearing, Mr. Sartin was 33 years old, he had a limited education, and he could communicate in English. (Doc. 10-3, p. 22). Mr. Sartin has past work experience as a saw operator and shipping clerk. (Doc. 10-3, p. 20).

The ALJ determined that Mr. Sartin had not engaged in substantial gainful activity since April 16, 2010, the alleged onset date. (Doc. 10-3, p. 15). The ALJ found that Mr. Sartin suffers from the following severe impairments:

> [a] history of skin grafts to the back and left arm and shoulder, adjustment disorder with depressed mood, blindness of the left eye due to a suprasellar mass status post radiation therapy, migraine headaches, degenerative joint disease of the right knee, and L5-S1 spondylitis with muscle spasms (20 CFR 416.920(c)).

(Doc. 10-3, pp. 15-16). However, the ALJ determined that the impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 10-3, pp. 15-16).

Next, the ALJ determined that Mr. Sartin retains the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, that the

claimant should be able to stand and/or walk with normal breaks for a total of six hours in an eight hour workday and sit with normal breaks for up to six hours in an eight hour workday, that he can occasionally push and/or pull and reach overhead with the left upper extremity and occasionally use foot controls with the right lower extremity, that he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never work on ladders, ropes or scaffolds, that he should avoid heavy vibratory type jobs, along with hazardous machinery and unprotected heights, that due to his blindness, he would be limited to mononuclear vision and may have difficulties in peripheral vision situations; however, he would be able to read and drive, that he can understand and remember simple instructions, that he could maintain concentration for an eight hour workday in two hour intervals and would have only occasional contact with the general public, coworkers, and supervisors, and that any change in the workplace should be gradually introduced and the claimant may require assistance with realistic goals and making of plans.

(Doc. 10-3, pp. 16-17). When discussing Mr. Sartin's RFC, the ALJ stated that "x-rays of the lumbar spine in August 2010 showed minimal changes of muscle spasm and the straightening of the spine with mild L5-S1 disc spondylitis." (Doc. 10-3, p. 18).

Based on this RFC assessment, the ALJ found that Mr. Sartin cannot perform his past relevant work. (Doc. 10-3, p. 22). Considering Mr. Sartin's age, education, work experience, and RFC, the ALJ determined that there are jobs in significant numbers in the national economy that Mr. Sartin can perform. (*Id.*). Thus, the ALJ concluded that Mr. Sartin is not disabled as defined in the Act, and the ALJ denied Mr. Sartin's application for benefits. (Doc. 10–3, pp. 23-24).

## ANALYSIS

To be eligible for disability benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id*. (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* at 930 (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also* 20 C.F.R. § 404.1545(a)(1).

Mr. Sartin argues that he is entitled to relief from the ALJ's decision because the ALJ (1) failed to give proper weight to the opinions of treating physicians Dr.

Jeffery Long and Dr. Shelby Sanford, (2) failed to give proper weight to the opinion of consultative psychologist Dr. James Crowder, and (3) failed to fully develop the record because he did not order an IQ test for Mr. Sartin. Mr. Sartin's arguments are not persuasive.

### A. The ALJ Properly Weighed the Opinions of Dr. Long, Dr. Sanford, and Dr. Crowder.

Mr. Sartin contends that the ALJ did not give proper weight to Dr. Long's and Dr. Sanford's opinions that Mr. Sartin was totally disabled. The Court disagrees.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error. 'Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed. Appx. at 932 (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997), and quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

In this case, the ALJ clearly articulated specific reasons for affording Dr. Long's and Dr. Sanford's (referred to as "Dr. Shelby" in the ALJ's opinion) opinions little weight. The ALJ stated:

> The undersigned has not given the opinions of Dr. Long and Dr. Shelby significant weight in this case because both opinions offer conclusory statements of limitations instead of actual specific limitations resulting in the conclusion of an inability to work. Rather, the opinions were expressed through a prepared form by the claimant's representative with simple circle yes or no answers and no details provided as to the evidence to support these answers. Additionally, the form did not define the terminology used in the questions leaving doubt as to whether the physician has the expertise to give an opinion based upon the terminology as defined for purposes of disability. Furthermore, the undersigned finds both Dr. Long and Dr. Shelby's detailed treatment notes, including objective diagnostic testing and clinical signs on examinations, are not consistent with the level of functioning expressed in the opinion forms making them less persuasive. As such, the undersigned notes the issue of whether or not the claimant is able to work an eight hour workday (aka unable to work due to impairments) is an issue reserved for the Commissioner of Social Security. As a result, Dr. Long and Dr. Shelby's opinions are not entitled to any special significance.

(Doc. 10–3, p. 21).

The Court has reviewed the opinions of Dr. Long and Dr. Sanford and confirmed that Dr. Long and Dr. Sanford merely completed a form that contained four questions. The first question asked Drs. Long and Sanford to state the duration of the doctor-patient relationship. The other three questions required only yes or no answers. The second asked whether Mr. Sartin could sustain an eight-hour workday. (*Id.*). The third question asked whether Mr. Sartin's condition was

expected to last twelve months or longer. (*Id.*). The final question asked whether Mr. Sartin would be limited to less than sedentary work as a result of his condition. (*Id.*). There is no space on the questionnaire for an explanation or narrative to explain the opinion. Dr. Long and Dr. Sanford each indicated that, in his opinion, Mr. Sartin could not work an eight-hour day, Mr. Sartin's condition would persist for at least twelve months, and Mr. Sartin was limited to less than sedentary work. (Doc. 10-9, pp. 21-23).

The Court has reviewed treatment notes from Dr. Long and Dr. Sanford and confirmed that these notes are inconsistent with the physicians' responses to the short questionnaire. The record reflects that Dr. Long saw Mr. Sartin at Dr. Long's family practice five times between Mr. Sartin's claimed onset date of September 12, 2009 and March 2011. (Doc. 10-8, pp 3-12). Before the alleged onset date, the record shows that Dr. Long saw Mr. Sartin dating back as far as June 2003. (Doc. 10-8, p. 11). In February 2010, Mr. Sartin reported that he was about to start radiation therapy for his pituitary tumor, and Dr. Long diagnosed him with sinusitis, a sellar mass, migraines, and muscle pains. (Doc. 10-8, p. 7). In October 2010, Mr. Sartin reported that he was having panic attacks and felt "stressed out," and in November he complained of a rash, back pain, and anxiety. (Doc. 10-8, p. 6). At a later visit in November, Mr. Sartin reported experiencing four-to-five anxiety attacks per day. (Doc. 10-8, p. 4). During Mr. Sartin's last visit with Dr.

Long in March 2011, he complained that he could not breathe well, and he obtained medication for an infection. Dr. Long refilled Mr. Sartin's prescriptions for Valium, Cataflam, and Paxil. (Doc. 10-8, p. 3).

Dr. Sanford, a radiation oncologist, treated Mr. Sartin for his pituitary tumor between February 2010 and April 2011. (Doc. 10-8, pp. 39-48). Dr. Sanford's initial visit with Mr. Sartin was in February 2010. At that appointment, Dr. Sanford noted that Mr. Sartin was blind in his right eye due to his pituitary tumor. Dr. Sanford found no other medical problems other than migraines and arthritis. (Doc. 10-8, p. 46). Mr. Sartin completed a course of radiation therapy which lasted for a six week period between March and April 2010. (*Id.*). In March 2010, in relation to the radiation therapy, Dr. Sanford noted that Mr. Sartin "tolerated this well with no untoward treatment related sequlae with no headaches, skin reaction or visual change in the right eye." (Doc. 10-8, p. 45). Following the radiation therapy, at his four-week checkup, Mr. Sartin reported that he had no headaches, and Dr. Sanford noted that he was "pleased with [Mr. Sartin's] stability and tolerance" to the treatment. (Doc. 10-8, p. 44). Between August 2010 and January 2011, Mr. Sartin reported that he was experiencing dizziness, headaches, a sore throat, anxiety, and depression. (Doc. 10-8, pp. 41-43). On November 4, 2010, Dr. Sanford wrote a letter stating that Mr. Sartin "is totally disabled from his disease situation." (Doc. 10-9, p. 39). However, in April 2011, Dr. Sanford noted

9

that Mr. Sartin was "much better overall," that the medication was helpful for his headaches, and that his vision had improved with steroids. (Doc. 10-8, p. 39).

On this record, the ALJ gave proper weight to the opinions that Dr. Long and Dr. Sanford expressed on the short questionnaire. "[C]heck-off forms ... have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009 (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985)) (rejecting opinion from a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The questionnaire did not provide a way to ascertain the basis of Dr. Long or Dr. Sanford's opinion, and neither Dr. Long nor Dr. Sanford identified the limitations assessed or the evidence that supported the opinion expressed in the questionnaire.

Substantial evidence supports the ALJ's conclusion that treatment notes from Dr. Long and Dr. Sanford are inconsistent with the physicians' answers to the questionnaire. Mr. Sartin's medical records indicate a fairly conservative course of treatment that seemed to work. Because the opinions that Dr. Long and Dr. Sanford offered are conclusory and inconsistent with the physicians' treatment

notes, the ALJ did not err in attributing little significance to Dr. Long's and Dr. Sanford's opinions. (Doc. 10-3, p. 21).

Mr. Sartin also argues that the ALJ improperly "ignored and gave no weight" to Dr. Crowder's opinion that Mr. Sartin had a "moderate restriction of daily activities and poor to fair ability to respond appropriately to supervisors, co-workers and work pressures in a work setting." In his decision, the ALJ explained that he gave:

> little weight to Dr. Crowder's opinion that the claimant has moderate restriction of daily activities and a poor to fair ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting (Exhibit B10F) as it appears based solely upon reports the claimant made to Dr. Crowder at the time of the examination which are inconsistent with other reports made by the claimant in the record. The claimant reported he had some difficulty with authority figures, but had never been fired from a job for not getting along with others and was able to spend time with others daily. (Exhibit B5E). Also, the claimant did not report these levels of severity to any treating physician or at the hearing. Furthermore, Dr. Crowder assessed the claimant a GAF score of 55-60, which is inconsistent with his opinion regarding poor to fair ability to respond to supervisors, co-workers, and work pressures. . . . [T]he undersigned gives great weight to the GAF score assessed by Dr. Crowder as it is more consistent with the record as a whole in regards to the claimant's mental functioning.

(Doc. 10-3, p. 21).

Dr. Crowder was a one-time examining consultative psychologist. (Doc. 10-8, pp. 68-71). Therefore, his opinion is not entitled to deference. *See Denomme v. Comm'r of Soc. Sec.*, 518 Fed. Appx. 875, 879 (11th Cir. 2013) ("The ALJ does

11

not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (*citing McSwain v. Bowen*, 814 F. 2d 617, 619 (11th Cir. 1987)). Nevertheless, the ALJ still was required to explain the weight he assigned to Dr. Crowder's opinion and the rationale for doing so. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.") (*citing Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam).

The ALJ offered a sufficient explanation for affording Dr. Crowder's opinion little weight. The record supports this explanation. *See Poellnitz v. Astrue*, 349 Fed. Appx. 500, 503 (11th Cir. 2009) (holding that the opinion of an examining physician as to marked and extreme limitations was properly discounted due to her own reports, including the GAF score she assigned, and the claimant's activities of daily living).

Because Dr. Crowder's opinion is not entitled to deference, and because the ALJ stated with particularity the weight assigned to Dr. Crowder's opinion and the reasoning for the weight assigned, substantial evidence supports the ALJ's decision to give little weight to a portion of Dr. Crowder's opinion.

Mr. Sartin contends that the ALJ did not properly consider sun poisoning when determining Mr. Sartin's RFC and the types of jobs that he still can perform. This argument is unpersuasive. At the ALJ hearing, the vocational expert testified that none of the jobs that Mr. Sartin still can perform (laundry folder, ticket taker, and garment presser) would require significant exposure to the sunlight. (Doc. 10-3, p. 60). Thus, Mr. Sartin's argument is inconsistent with the record.

### B.     The ALJ Properly Developed the Record.

Mr. Sartin argues that the ALJ did not discharge his duty to fully develop the record when he did not order IQ testing for Mr. Sartin. An ALJ has a duty to obtain a consultative examination only when a final determination cannot be made from the record as a whole. *Johnson v. Barnhart*, 138 Fed. Appx. 266, 270 (11th Cir. 2005). As the Eleventh Circuit has stated:

> In making disability determinations, the Commissioner considers whether the evidence is consistent and sufficient to make a determination. If it is not consistent, the Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians.

*Johnson*, 138 Fed. Appx. at 270–71; *see also Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. 2014) (holding that when the record is fully and fairly developed, it is not necessary for an ALJ to order a consultative examination to make an informed decision).

When discussing Mr. Sartin's severe impairments, the ALJ stated:

13

> The claimant's representative made an oral request at the hearing for IQ testing due to Dr. Crowder's indication of estimated borderline intellectual range. The undersigned has taken the request under advisement and finds the record does not show the borderline intellectual functioning or adaptive deficits prior to the age of 22. The claimant reported he was in special education classes while in school, but he also reported he is able to read, write, and understand English (Exhibit B1E). The record also shows the claimant filled out his disability paperwork without reported assistance (Exhibit B5E) and previously performed semi-skilled work. Furthermore, the claimant reported reading as one of his hobbies and was able to perform simple oral calculations correctly during a consultative examination (Exhibits B5E and B10F). The claimant reported he dropped out of school in the 11th grade, got married, and performed semi-skilled level jobs. As such, the undersigned finds Dr. Crowder's indicate [sic] is only an estimated functioning level and not supported by the record as a whole. The undersigned finds the claimant's intellectual functioning as established by the evidence of record does not support the need for IQ testing in this case.

(Doc. 10-3, p. 16).

The ALJ determined that the record was sufficient to make a final determination on Mr. Sartin's mental impairments and reduced his RFC accordingly. The ALJ determined that Mr. Sartin is subject to a medically determinable mental impairment and that the limitations resulting from that impairment are mild restrictions in daily activities and moderate restrictions in social functioning and concentration, persistence, and pace. (Doc. 10-3, p. 19). However, the ALJ did note that the record contains inconsistencies regarding Mr. Sartin's daily activities. (*Id.*). Mr. Sartin reported that he needed reminders, did not follow written instruction or handle stress well, and did not finish what he

started.  (*Id.*).  Mr. Sartin also reported he performed his activities of daily living independently, spent time with others daily, prepared simple meals, watched television and movies, played board games, and read.  (Doc. 10-7, pp. 31-35).

The ALJ found that Mr. Sartin's reported activities show a fairly high level of mental functioning with levels of concentration that allow him to maintain attention through television shows, movies, and board games.  (Doc. 10-3, p. 19). The record contains no evidence which suggests that Mr. Sartin sought mental health treatment. The ALJ accorded Mr. Sartin the benefit of the doubt in assessing Mr. Sartin's mental limitations and still concluded that the evidence demonstrates that Mr. Sartin has only moderate limitations in social functioning and concentration, persistence, and pace.  (*Id.*).  The ALJ accounted for Mr. Sartin's mental impairment by reducing Mr. Sartin's RFC to exclude work involving more than the ability to understand, remember, and carry out short simple instructions and maintain concentration in two-hour intervals.  (Doc. 10-3, pp. 19).

Because the ALJ properly weighed the available evidence in the record and determined that is was sufficient to reach a decision, his decision not to order an IQ test is supported by substantial evidence, and he did not fail to fully develop the record.

## **CONCLUSION**

Consistent with the foregoing, the Court concludes that the Administrative Law Judge's decision was based upon substantial evidence and consistent with applicable legal standards. The record contains evidence that Mr. Sartin has received treatment for a number of significant health conditions such as burns and a tumor, but substantial evidence in the record supports the ALJ's conclusion that Mr. Sartin has recovered from or received adequate treatment for those conditions such that Mr. Sartin has a residual functional capacity that enables him to perform jobs that are available in the economy. The Court may not reweigh the evidence.

The Court will enter a separate order consistent with this memorandum opinion dismissing this case.

**DONE** and **ORDERED** this April 30, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE